**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

**STACY FULLER, 06-B-2675,**

                                        **Plaintiff,**                    **06-CV-00033(Sr)**

**v.**

**MICHAEL RANNEY, et al.,**

                                        **Defendants.**

_____

**DECISION AND ORDER**

               Pursuant to 28 U.S.C. § 636(c), the parties have consented to the

assignment of this case to the undersigned to conduct all proceedings in this case,

including the entry of final judgment.  Dkt. #38.

               Currently before the Court are the following motions:

      (1)      Plaintiff's Motion for Summary Judgment (Dkt. #47);

      (2)      Plaintiff's "Motion to Grant Summary Judgment Due to Lack of
               Opposition Thereto" (Dkt. #60);

      (3)      Defendants' Motion for Summary Judgment (Dkt. #77); and

      (4)      Plaintiff's "2nd Notice of Motion" requesting the Court treat Plaintiff's
               Response (Dkt. ##82-85) to Defendants' Motion for Summary
               Judgment as a Cross-Motion for Summary Judgment (Dkt. #86).

Plaintiff commenced this _pro se_ action on or about January 17, 2006 pursuant to  42

U.S.C. § 1983.  Dkt. #1.  Thereafter, plaintiff filed two amended complaints (Dkt. ##3

and 15).  At all times relevant to the allegations in plaintiff's amended complaint, plaintiff

was incarcerated at the Erie County Holding Center.  Specifically, plaintiff was

incarcerated at the Erie County Holding Center from on or about September 14, 2005 to October 4, 2006 when he was transferred to the custody of the New York State Department of Correctional Services. Plaintiff is currently in the custody of the New York State Department of Correctional Services and is being housed at the Eastern Correctional Facility. Plaintiff alleges that while he was incarcerated at the Erie County Holding Center, he was denied adequate psychiatric and psychological treatment in violation of the Eighth Amendment to the United States Constitution. Dkt. #15.

Plaintiff's "2nd Notice of Motion" (Dkt. #86) requesting the Court treat Plaintiff's Response to Defendants' Motion for Summary Judgment (Dkt. ##82-85) as a Cross-Motion for Summary Judgment is granted. The Court notes that it has fully considered each and every motion and opposition thereto filed by the parties. For the following reasons, plaintiff's motion for summary judgment (Dkt. #47), plaintiff's "Motion to Grant Summary Judgment Due to Lack of Opposition Thereto" (Dkt. #60), and plaintiff's response to defendants' motion for summary judgment (Dkt. ##82-85) (cross motion for summary judgment (Dkt. #86)) are denied and defendants' motion for summary judgment (Dkt. #77) is granted.

## FACTUAL BACKGROUND

Plaintiff, proceeding *pro se*, commenced this action on or about January 16, 2006 against "Michael Ranney, Forensic Director, Dr. Joseph, and July, Forensic Counselor." Dkt. #1. Thereafter, plaintiff amended his complaint once as of right (Dkt. #3) on July 24, 2006 and defendants filed their answer on October 31, 2006 (Dkt. #9).

What purports to be a second amended complaint was filed on January 22, 2007 (Dkt. #15), however, the Court notes that the document filed is neither a motion to amend the complaint nor was the plaintiff ever granted permission from this Court to amend his complaint. Moreover, the Court further notes that it has carefully compared the amended complaint (Dkt. #3) and the purported second amended complaint (Dkt. #15) and has concluded that there were no changes to the substantive factual allegations presented in the amended complaint (Dkt. #3). Compare Dkt. ## 3 and 15. Accordingly, this Court concludes that although a purported second amended complaint was filed by the Clerk's Office, it is not an operational document insofar as plaintiff neither sought nor received permission from this Court to file a second amended complaint. The Court further notes, however, that for purposes of deciding the pending motions, the Court has fully considered the allegations in the purported second amended complaint (Dkt. #15).

On or about September 15, 2005, plaintiff was admitted to the Erie County Holding Center. Dkt. #55, ¶ 1. In his amended complaint, however, plaintiff alleges that he was arrested and brought to the Erie County Holding Center on or about September 14, 2005 and was immediately housed in a "Constant Observation Unit." Dkt. #3, p.3. On September 16, 2005, plaintiff was evaluated by defendant Juli Van Woert[1] in the

---

[1] Defendant Juliann Van Woert, MS, CRC, LMHC named in the complaint and amended complaint as "July," was at all times relevant to the allegations in the amended complaint a nationally Certified Rehabilitation Counselor and licensed in the State of New York as a Mental Health Counselor. She was employed as a Forensic Mental Health Specialist for the County of Erie Department of Mental Health in the Forensic Mental Health Service and was assigned to the Erie County Holding Center.

Erie County Holding center's constant observation unit.  Dkt. #55, ¶ 2.  In her affidavit, defendant Van Woert explained that plaintiff was initially housed in the constant observation unit by the deputies involved in his booking because plaintiff was threatening to hurt himself.  Dkt. #79-8, ¶ 6.  Defendant Van Woert further noted in her affidavit that prior to her evaluation of plaintiff, plaintiff was evaluated by Dr. Ronald Moscati of the Erie County Holding Center's medical department and plaintiff was prescribed drug withdrawal controlling medication.  *Id*.  Defendant Van Woert completed a three-page Screening and Admission Summary following her evaluation of plaintiff.  *Id*.  On the Screening and Admission Summary, defendant Van Woert noted that plaintiff reported a history of depression, drug and alcohol abuse, drug and alcohol withdrawal and lifestyle and other problems.  *Id*.  In addition, defendant Van Woert checked the line for "Forensic Housing" and placed a question mark next to "Psychiatric Assessment/Med Assessment."  *Id*.  Defendant Van Woert discontinued constant observation for plaintiff and approved him to be moved to either the Delta Long or Delta Short housing unit with routine supervision.  Dkt. #79-8, ¶ 7.  In his amended complaint, plaintiff alleges that "on or about September 16, 2005, the Plaintiff was transferred from "Constant Observation" ... to a forensic block ..."  Dkt. #3, p.3.

On September 23, 2005, plaintiff was again seen by defendant Van Woert, as well as Dr. Brian Joseph.[2]  Dkt. #79-8, ¶ 3; Dkt. #79-10, ¶ 6.  At that time,

---

Dkt. #79-8, ¶ 1.

[2] At all times relevant to the allegations in plaintiff's complaint and amended complaint, defendant Joseph was a physician licensed to practice medicine in New

defendant Van Woert completed a Forensic Mental Health Service Medication/Psychiatric Consultation Form. Dkt. #55, ¶ 3. On the form, defendant Van Woert noted that the reason for the consultation was "eval for depression, meds [questionable hx psychosis]". In the section titled Counselor Comments & Observations, defendant Van Woert stated "c/o ↑ depression and ... states recent meds of Celexa Depakote and Seroquel Heavy ETOH, cocaine + marijuana to 9/14/05 multiple X hospital locally and in NYC per client." Dkt. #55, ¶ 3; Dkt. #59, p.24. On the same form, defendant Van Woert completed the section "Psychiatric Response" with extensive notes reflecting her evaluation of plaintiff. Dkt. #55, ¶ 4; Dkt. #59, p.24. In her affidavit, defendant Van Woert noted that plaintiff had advised her that he was receiving mental health treatment in Chautauqua County and had been taking Celexa, Depakote and Seroquel until three weeks prior to his incarceration. Dkt. #79-8, ¶ 7. However, plaintiff was unable to provide defendant Van Woert with any further information concerning the dosage of the medication or pharmacy information. *Id*.

In his affidavit submitted in support of his motion for summary judgment, defendant Brian Joseph described his September 23, 2005 interaction with plaintiff as follows:

> I became involved in Mr. Fuller's care on September 23, 2006 [sic] pursuant to a referral made at the plaintiff's

---

York since 1969 and board certified by the American Board of Psychiatry and Neurology, as well as sub-certified in Forensic Psychiatry. Dkt. #79-11, ¶ 1. In addition to maintaining a private psychiatric practice, Dr. Joseph was at all times relevant, employed by Erie County on a part-time basis as the Chief Psychiatrist for the Forensic Mental Health Service. *Id*.

request to be evaluated by a Psychiatrist. Mr. Fuller was evasive during our interview. He advised me about what medications he allegedly had been taking before his incarceration, but did not provide me with specific information regarding dosages or medical providers. He informed me of a long history of mental illness, but was vague about where he had received treatment, only saying that he had been a patient at the Erie County Medical Center on numerous occasions years ago. With regard to illegal drug use, Mr. Fuller advised that he uses "everything", but refused to tell me what his source of money was. We discussed the charges against him also. During our interaction, Mr. Fuller appeared calm and appropriate. One of the inconsistent findings that I noted was that Mr. Fuller's speech was slowed; however, his overall body movement was normal. Also, he frequently stated that he did not know the answers to questions that he really could have answered. In addition to his evasiveness, Mr. Fuller was manipulative. My impression was that Mr. Fuller suffered from a poly-substance abuse disorder, particularly severe with regard to cocaine, and an antisocial personality disorder. My orders to the FMHS [Forensic Mental Health Service] staff were, "no medications, observe only for now, patient to return as needed".

Dkt. #79-10, ¶ 6.


On October 5, 2005, plaintiff was again evaluated by defendant Van Woert, wherein defendant Van Woert completed a Medication/Psychiatric Renewal Form. Dkt. #55, ¶ 5; Dkt. #59-2, p.6. On the form, defendant Van Woert noted that plaintiff continued to complain about depression and mood swings. *Id*. On October 7, 2005, defendant Joseph again evaluated plaintiff and noted on the Medication/Psychiatric Renewal Form that plaintiff was calm and appropriate and his mood was stable in the interview. Dkt. #59,-2, p.6; Dkt. #79-10, ¶ 7. In addition, defendant Joseph noted that plaintiff should return after his psychiatric records were

received.  Dkt. #79-10, ¶ 7.  Specifically, defendant Joseph stated in his affidavit that, "I was unable to diagnose any mental illness requiring medication and was interested to see the reasoning behind the other physicians prescribing the medications which plaintiff alleged to have been taking."  *Id*.

Defendant Van Woert noted in her affidavit that the Erie County Holding Center Medical Department contacted her on October 19, 2005 to advise her that plaintiff was requesting pain medication for back pain secondary to scoliosis.  Dkt. #79-8, ¶ 9.  When the medical department found no evidence of scoliosis, plaintiff complained of falling prior to his incarceration.  *Id*.  Thereafter, the medical department prescribed plaintiff Motrin for seven days.  *Id*.  On October 31, 2005, defendant Van Woert met with plaintiff in response to his requests.  Dkt. #79-8, ¶ 10.  Plaintiff requested medication for depression and anxiety and expressed anger that defendant Joseph had not prescribed medication for him.  *Id*.  Notwithstanding his anger, defendant Van Woert described that plaintiff "presented himself as animated and talkative, appearing rested and focused, and able to manage the stress of his legal case."  *Id*.  Moreover, defendant Van Woert concurred with the observations of the deputies on the housing unit concerning plaintiff's condition and how well he was functioning on the unit.  *Id*.  Because of plaintiff's subjective complaints of depression and anxiety, it was decided that plaintiff would remain on the Delta unit.  *Id*.  Finally, at defendant Van Woert's request, plaintiff executed an authorization form allowing the

Forensic Mental Health Service to obtain plaintiff's most recent medical records from the Chautauqua County Mental Health Service. *Id*.

On November 23, 2005, a staff review of plaintiff's case was conducted in response to his numerous requests for prescription medication. Dkt. #79-8, ¶ 11. The Delta housing unit deputies advised that plaintiff was doing well, was active on the unit, exhibited familiarity with prison routine and maintained himself well. *Id*. Although it was felt that plaintiff could be transferred into the Erie County Holding Center's general population, because the deputies felt that plaintiff was not a problem on the unit and because of his complaints of stress related to his pending criminal charges, the Forensic Mental Health Service allowed plaintiff to remain housed on the Delta unit. *Id*.

On or about November 25, 2005, defendant Van Woert learned from the Chautauqua County Mental Health Service that plaintiff reported to them that he had been receiving Celexa in prison, however, Chautauqua County Mental Health Service was never provided with any records to confirm plaintiff's statement. Dkt. #79-8, ¶ 12. Plaintiff was seen by the Chautauqua County Mental Health Service on December 20, 2004, January 10, 2005, January 19, 2005 and January 26, 2005; plaintiff cancelled his February 10, 2005 and February 16, 2005 appointments. *Id*. Defendant Van Woert was advised that plaintiff was prescribed Celexa on January 3, 2005 "on the client's word" because he had not yet been evaluated by their psychiatrist. *Id*. Thereafter, plaintiff was evaluated on March 29, 2005, May 17, 2005 and June 16, 2005. *Id*.

Plaintiff failed to keep his July 28, 2005 appointment and Chautauqua County Mental Health Service closed their file on August 26, 2005 because they had not heard from plaintiff since June 16, 2005. *Id*. The staff at Chautauqua County Mental Health Service characterized plaintiff as being "stable and med-seeking" and their working diagnosis for plaintiff was "rule-out bipolar disorder" and the last medications they prescribed for plaintiff were Depakote ER 1000mg, Celexa 40mg and Seroquel 25mg. *Id*. Based on the information supplied by Chautauqua County Mental Health Service, defendant Van Woert referred plaintiff for another psychiatric examination on November 30, 2005. Dkt. #79-8, ¶ 13.

Defendant Joseph next saw plaintiff on December 2, 2005 and at that time, Forensic Mental Health Service had received plaintiff's medical records from Chautauqua County Behavioral Health Services indicating that plaintiff had last been seen on June 16, 2005 and that their working diagnosis was "Major Depression, rule-out Bipolar Disorder." Dkt. #79-10, ¶ 8. In addition, plaintiff's medications and dosages were confirmed. *Id*. Notwithstanding the foregoing, defendant Joseph stated in his affidavit that, "during this incarceration Mr. Fuller appeared stable, which the examination on this date revealed once again. Although plaintiff was claiming depression and mood swings, there was nothing about his presentation which would allow me, with a reasonable degree of medical certainty, to make any such diagnosis and medically justify restarting medications." *Id*. Following his evaluation by defendant Joseph, plaintiff threatened to "act out in some way in response to Forensic Dr not ordering medications." Dkt. #79-8, ¶ 13. Thereafter, defendant Van Woert completed a

Suspected Suicidal Inmate Notification Form and requested that an enhanced watch of plaintiff begin for the safety of the plaintiff, other inmates and the staff. *Id*.

On December 8, 2005, during a routine discussion with an evening deputy on the Delta unit, defendant Van Woert was advised the plaintiff appeared more agitated and irritable possibly due to the pending charges. Dkt. #79-8, ¶ 14. As a result, defendant Van Woert referred plaintiff to defendant Joseph for another evaluation. *Id*. Indeed, defendant Joseph evaluated plaintiff the following day, December 9, 2005. *Id*.

Defendant Joseph conducted his final evaluation of plaintiff on December 9, 2005. Dkt. #79-10, ¶ 9. During his final evaluation, defendant Joseph noted the information from Forensic Mental Health Service and Erie County Holding Center staff concerning plaintiff pacing and frequently requesting to be locked in his cell at night, as well as his exhibiting increased agitation. *Id*. In addition, defendant Joseph understood that plaintiff wanted his medication request to be reconsidered. *Id*. As with his previous encounters with the plaintiff, defendant Joseph found the plaintiff to be calm and appropriate during the evaluation. *Id*. Indeed, defendant Joseph noted that although plaintiff stated that he was having negative thoughts, he refused to share specific information concerning those thoughts. *Id*. Significantly, defendant Joseph explains in his affidavit that although he had received information concerning plaintiff's medications

several times, Chautauqua County Mental Health Service refused to send their actual records. *Id*.

Finally, defendant Joseph provides the following information concerning his conclusions about plaintiff's treatment,

> As a physician, I must exercise my clinical judgment when dealing with any patient which is based upon my education, training, and years of experience. I concluded with a reasonable degree of medical certainty that at no point in any of my contacts with Mr. Fuller could I diagnose him with a mental illness and justify, for any medical reason, the prescription of medication. It is not my customary practice to prescribe medication at the insistence of any patient. I am further certain that Mr. Fuller had an ulterior motive for wanting a mental health diagnosis and medication. It is not uncommon in prison settings to have inmates demanding medications for a variety of reasons, not the least of which is to obtain a mental health diagnosis in order to be perceived as "sick vs. criminal". In a patient with a significant abuse disorder such as Mr. Fuller had, the preferred therapeutic approach is to refrain from administering psychotropic medications until the patient is cleared from all substances and can be evaluated for any underlying <u>true</u> mental health issues. Mr. Fuller, even during his detoxification period early in this incarceration, was not exhibiting mental health symptoms.

Dkt. #79-10, ¶ 11 (emphasis in original). Moreover, defendant Joseph notes that he is unaware of any injury suffered by plaintiff as a result of his alleged inadequate medical treatment. *Id*. at ¶ 12.

At defendant Joseph's request, defendant Van Woert again verified the medications previously taken by plaintiff and as prescribed by "Chautauqua Co. Beh. Health" as "Celexa 40 mg, Seroquel 25 mg and Depakote ER 550 2 @hs." Dkt. #55,

¶ 15; Dkt. #59, p.40.  On or about February 16, 2006, defendant Van Woert received a telephone call from Justice Timothy Drury's Chambers inquiring about plaintiff's medication.  Dkt. #79-8, ¶ 15.  Apparently, plaintiff had complained during an appearance before Justice Drury that he was not being permitted to take his medication and therefore, he was unable to proceed in Court.  *Id*.  Defendant Michael R. Ranney, MS, CRC, LMHC, the Director of Intensive Adult Mental Health Services with Erie County's Forensic Mental Health Service, returned the call to Justice Drury's Chambers.  Dkt. #79-9, ¶ 8.  Defendant Ranney advised the Court that plaintiff had been evaluated by defendant Joseph on four separate occasions and that defendant Joseph did not diagnose anything that defendant Joseph felt, in his clinical judgment, warranted prescribed medication.  *Id*.

On February 23, 2006, Evelyn M. Coggins, M.D. conducted a Court ordered psychiatric evaluation of plaintiff at the request of Justice Drury.  Dkt. #79-11, ¶ 6.  At the time she submitted her affidavit in support of defendants' motion for summary judgment, Dr. Coggins maintained a private psychiatric practice and served as a consultant for the Erie County Forensic Mental Health Service.  Dkt. #79-11, ¶ 1.  Defendant Van Woert was present during that Court ordered evaluation.  Dkt. #79-8, ¶ 16.  In her affidavit submitted in support of defendants' motion for summary judgment, Dr. Coggins states that she found plaintiff's history of depression and anxiety to be questionable and further that "it was unclear, although likely, that his mood and anxiety symptoms did not occur separately from his multi-substance abuse and addictions."  Dkt. #79-11, ¶ 6.  Moreover, Dr. Coggins noted that although plaintiff complained of a

depressed mood, there was nothing in his appearance nor did anything arise during his mental status evaluation to indicate an active depressive syndrome. *Id*. at ¶ 7. Dr. Coggins did state, however, that plaintiff presented as an individual with Antisocial Personality Disorder. *Id*. Finally, upon the completion of her evaluation, Dr. Coggins opined with a reasonable degree of medical certainty that there was no diagnostic indication to medicate plaintiff. *Id*. at ¶ 8.

On March 3, 2006, at the request of Justice Drury, John M. Wadsworth, M.D. conducted a second competency evaluation of plaintiff. Dkt. #79-12, ¶ 6. At the time he submitted his affidavit, Dr. Wadsworth maintained a private psychiatric practice and acted as a consultant for the Erie County Forensic Mental Health Service. *Id*. at ¶ 1. In his affidavit submitted in support of defendants' motion for summary judgment, Dr. Wadsworth states,

> Mr. Fuller reported that prior to his incarceration he had been receiving psychiatric care and receiving three medications which he had not taken since his present imprisonment. However, Mr. Fuller did not offer any significant complaints during my evaluation, did not request that I prescribe any medications for him, and he did not provide me with evidence of any illnesses for which I would have prescribed medication at that time. My evaluation of Mr. Fuller failed to reveal any suggestions that he was suffering from psychosis, significant depression, or manic-depressive illness. Mr. Fuller did exhibit significant symptoms of personality disorder difficulties.

Dkt. #79-12, ¶¶ 6-7. At the conclusion of his evaluation, Dr. Wadsworth opined with a reasonable degree of medical certainty that there was no diagnostic indication to medicate plaintiff. *Id*. at ¶ 8.

In response to plaintiff's request to be evaluated by a physician other than defendant Joseph, Dr. Wadsworth evaluated plaintiff on June 28, 2006. *Id*. at ¶ 9. At that time, plaintiff was concerned about a long prison sentence and the medical department questioned whether his physical complaints of headaches and heartburn were related to psychiatric issues. *Id*. As detailed in Dr. Wadsworth's affidavit submitted in support of defendants' motion for summary judgment, plaintiff was not talkative during Dr. Wadsworth's evaluation, although plaintiff did state that he was experiencing negative thoughts concerning his childhood, family life and people he had hurt. *Id*. In addition, Dr. Wadsworth noted that plaintiff cried during the evaluation and complained about poor concentration and moodiness. *Id*. At this time, Dr. Wadsworth concluded that plaintiff "did present with symptoms of clinical depression." *Id*. Due to the change in his clinical presentation, Dr. Wadsworth prescribed plaintiff 10 mg of Celexa to be administered daily. *Id*.

Approximately one month later, Dr. Wadsworth evaluated plaintiff's response to the 10 mg of Celexa. *Id*. at ¶ 10. Plaintiff stated that he continued to suffer from physical symptoms, including headaches and heartburn which were also being addressed by the Erie County Holding Center Medical Department. *Id*. Plaintiff further advised Dr. Wadsworth that although his mind was still racing, he was not feeling as helpless. *Id*. Dr. Wadsworth discontinued the 10mg of Celexa and ordered that 100mg of Elavil be given at bedtime. *Id.* Approximately one month later, on or about August 23, 2006, Dr. Wadsworth evaluated plaintiff's response to the 100mg of Elavil. *Id*. at

¶ 11.  Although plaintiff did not share any physical complaints and stated that he was sleeping better, plaintiff still complained of racing thoughts and again reminded Dr. Wadsworth that in his opinion 40mg of Celexa works better for him.  *Id*.  Thereafter, Dr. Wadsworth discontinued the Elavil and prescribed 40mg of Celexa to be administered daily.  *Id*.  Finally, Dr. Wadsworth notes that at no time did plaintiff report to him that he had considered or attempted suicide during his period of incarceration at the Erie County Holding Center.  *Id*. at ¶ 12.  Prior to plaintiff's next scheduled appointment with Forensic Mental Health Service, plaintiff was transferred to the New York State Department of Correctional Services on or about October 4, 2006 to begin serving his sentence.  *Id*. at ¶ 13.

## DISCUSSION AND ANALYSIS

### Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c).  "In reaching this determination, the court must assess whether there are any material factual issues to be tried while resolving ambiguities and drawing reasonable inferences against the moving party, and must give extra latitude to a *pro se* plaintiff."  *Thomas v. Irvin*, 981 F. Supp. 794, 798 (W.D.N.Y. 1997) (internal citations omitted).

A fact is "material" only if it has some effect on the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248; *see Bryant v. Maffucci*, 923 F.2d 979 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991).

Once the moving party has met its burden of "demonstrating the absence of a genuine issue of material fact, the nonmoving party must come forward with enough evidence to support a jury verdict in its favor, and the motion will not be defeated merely upon a 'metaphysical doubt' concerning the facts, or on the basis of conjecture or surmise." *Bryant*, 923 F.2d at 982 (internal citations omitted). A party seeking to defeat a motion for summary judgment

> must do more than make broad factual allegations and
> invoke the appropriate statute. The [party] must also show,
> by affidavits or as otherwise provided in Rule 56 of the
> Federal Rules of Civil Procedure, that there are specific
> factual issues that can only be resolved at trial.

*Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995).

**<u>Deliberate Indifference to Serious Medical Needs</u>**

In *Estelle v. Gamble*, the United States Supreme Court determined that "deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment" to the

United States Constitution.  429 U.S. 97, 104 (1976).  To establish an unconstitutional denial of medical care that rises to the level of an Eighth Amendment violation, a plaintiff (prisoner) must prove, beyond mere conclusory allegations, that the defendant acted with "deliberate indifference to [his] serious medical needs."  *Estelle*, 429 U.S. at 104.  More specifically, the prisoner must demonstrate both that the alleged deprivation is, in objective terms, "sufficiently serious," and that, subjectively, the defendant is acting with a "sufficiently culpable state of mind."  *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994), *cert. denied*, 513 U.S. 1154 (1995).  Both the objective and subjective components must be satisfied in order for a plaintiff to prevail on his claim.  *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).

### Objective Component

Under the objective component, in assessing whether a medical condition is "sufficiently serious," the Court considers all relevant facts and circumstances, including whether a reasonable doctor or patient would consider the injury worthy of treatment; the impact of the ailment upon an individual's daily activities; and, the severity and persistence of pain.  *See Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998).  A serious medical condition exists where the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.  *Id.*  Indeed, the Second Circuit has held that the alleged deprivation must be "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists."  *Hemmings v. Gorczyk*, 134 F.3d

104, 108 (2d Cir. 1998). "[I]n most cases, the actual medical consequences that flow from the alleged denial of care will be highly relevant to the question of whether the denial of treatment subjected the prisoner to a significant risk of serious harm." *Smith v. Carpenter*, 316 F.3d 178, 187 (2d Cir. 2003).

The types of conditions which have been held to meet the constitutional standard of serious medical need include: the failure to treat a painful and disfiguring facial keloid, *Brock v. Wright*, 315 F.3d 158, 160 (2d Cir. 2003); refusal to treat a cavity at risk of "acute infection[ ], debilitating pain and tooth loss" unless prisoner consented to extraction of another diseased tooth, *Harrison v. Barkley*, 219 F.3d 132, 136-37 (2d Cir. 2000); untreated dental problems that resulted in chronic pain for a period of six months resulting in tooth degeneration, *Chance*, 143 F.3d. at 702; failure to treat a ruptured Achilles tendon which resulted in swelling and pain, *Hemmings*, 134 F.3d at 106-07; confiscation of prescription eyeglasses necessary to correct serious vision problem and subsequent denial of medical treatment resulting in loss of vision in one eye, *Koehl v. Dalsheim*, 85 F.3d 86, 87-88 (2d Cir. 1996); failure to remove broken hip pins from prisoner's hip for over three years despite prisoner's complaint of persistent pain, *Hathaway*, 37 F.3d at 64-65; and, loss of an ear where doctor threw away prisoner's ear and stitched up the stump, *Williams v. Vincent*, 508 F.2d 541, 543 (2d Cir. 1974).

**Subjective Component**

The subjective component for the establishment of a claim of deliberate indifference to a serious medical need requires that the plaintiff establish that the defendant acted with a "sufficiently culpable state of mind" so as to violate the Eighth Amendment's cruel and unusual punishment clause. *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). "[A] prison official does not act in a deliberately indifferent manner unless that official 'knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Hathaway*, 37 F.3d at 66, *quoting Farmer v. Brennan*, 511 U.S. 825, 837 (1994). In *Estelle*, the Supreme Court ruled that deliberate indifference may manifest itself in a doctor's refusal to administer needed treatment, a prison guard's intentional denial or delay in granting an inmate access to medical care, or intentional interference with prescribed treatment. *Estelle*, 429 U.S. at 104-05.

"The subjective element of deliberate indifference 'entails something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result.'" *Hathaway*, 99 F.3d at 553, *citing Farmer v. Brennan*, 511 U.S. 825 (1994); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003), *cert. denied*, 543 U.S. 1093 (2005). The Supreme Court further stated in *Estelle* that, "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain' or to be

'repugnant to the conscience of mankind.'" *Estelle*, 429 U.S. at 105-06. Thus, the

Supreme Court added,

> [a] complaint that a physician has been negligent in
> diagnosing or treating a medical condition does not state a
> valid claim of medical mistreatment under the Eighth
> Amendment. Medical malpractice does not become a
> constitutional violation merely because the victim is a
> prisoner. In order to state a cognizable claim, a prisoner
> must allege acts or omissions sufficiently harmful to
> evidence deliberate indifference to serious medical needs.

*Id*. at 106; *see also Chance*, 143 F.3d at 703 (stating "[s]o long as the treatment given

is adequate, the fact that a prisoner might prefer a different treatment does not give rise

to an Eighth Amendment violation"). Indeed, "it is well-established that mere

disagreement over the proper treatment does not create a constitutional claim. So long

as the treatment given is adequate, the fact that a prisoner might prefer a different

treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at

703.


Here, plaintiff claims that defendants Ranney, Van Woert and Joseph

were deliberately indifferent to his serious medical needs in violation of his rights

pursuant to the Eighth Amendment to the United States Constitution. Plaintiff's claim

that he did not receive sufficient psychiatric and psychological evaluation and treatment

during the period of his incarceration at the Erie County Holding Center is belied by the

extensive notations in his medical and mental health records reflecting numerous

evaluations. Plaintiff was evaluated by defendant Van Woert the day after his

admission to the Erie County Holding Center. Thereafter, he was evaluated by

defendant Joseph within eight days of his admission and Dr. Joseph found plaintiff to be calm and appropriate and Dr. Joseph did not believe that medication was required. Thereafter, as discussed at length above, plaintiff was monitored and evaluated on a regular basis, was housed in a unit believed to be less stressful than the general population, received two outside psychiatric evaluations as to competency to stand trial and eventually, because of his continued complaints, plaintiff received a psychiatric second opinion.

Both defendant Van Woert and defendant Joseph evaluated plaintiff on numerous occasions. In addition to her evaluations of plaintiff, defendant Van Woert continued to monitor plaintiff through contact with the deputies assigned to plaintiff's housing unit and made recommendations as to further evaluations, treatment and housing. Once he learned of the plaintiff's complaints, defendant Ranney monitored plaintiff's treatment, including reviewing plaintiff's treatment records and learning the reasoning underlying the treatment plan and the results of the outside psychiatric evaluations. Dkt. #80, p.7. In addition, as described above, plaintiff was evaluated by two additional psychiatrists at the request of Justice Drury and both found not only that plaintiff was competent to stand trial, but also added that if they had determined that plaintiff had a serious medical need or that his existing treatment was inappropriate, they both would have suggested changes in plaintiff's course of treatment. *Id*. Finally, defendants add that in addition to the extensive mental health evaluations, counseling and monitoring, "plaintiff was seen on forty-one occasions by staff in the medical department for various complaints, where he was referred for forensic follow-up as

necessary, and where his overall condition was monitored and noted." *Id*. As a result of changes in plaintiff's condition, in late June 2006, Dr. Wadsworth prescribed plaintiff 10mg of Celexa which was subsequently modified to 100mg of Elavil and later, in late August 2006, modified to 40mg of Celexa.

Where, as here, the prisoner has received medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgment. Rather, "[p]rison officials have broad discretion in determining the nature and character of medical treatment afforded to inmates [and] courts have repeatedly held that a prisoner does not have the right to the treatment of his choice." *Ross v. Kelly*, 784 F.Supp. 35, 44-45 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir.1992) (internal citations omitted). Plaintiff's claim amounts to nothing more than a disagreement with the treatment he received and his insistence that he be prescribed certain medications. Without more, plaintiff's disagreement with the medical treatment he received does not rise to the level of a violation of his Eighth Amendment rights. Moreover, a subsequent decision to prescribe plaintiff a certain medication does not indicate that the medication should have been prescribed earlier. In fact, in his first evaluation of plaintiff in March 2006, Dr. Wadsworth (who subsequently prescribed plaintiff Celexa and Elavil) opined that he did not observe any evidence of an illness for which he would have prescribed any medication. The record before this Court reveals that those responsible for treating plaintiff did not find an illness for which the prescription of medication was warranted. Indeed, there is simply nothing in the record before this Court that supports plaintiff's claim that the injuries he allegedly suffered,

pain, discomfort, mental anguish and emotional distress, were at all related to defendants' alleged deliberate indifference to a serious medical need. Thereafter, when Dr. Wadsworth concluded that plaintiff's clinical presentation had changed sufficiently and the prescription of medication was warranted, plaintiff was prescribed 10mg of Celexa and Dr. Wadsworth continued to monitor plaintiff monthly and made certain modifications to the medication as necessary.

Based on the record before this Court, plaintiff cannot satisfy either the objective or the subjective prong sufficient to establish an Eighth Amendment violation. Even assuming *arguendo* that plaintiff's alleged injuries do meet the objective component of an Eighth Amendment violation, the actions taken by defendants Ranney, Joseph and Van Woert do not represent deliberate indifference to those injuries. Plaintiff's mental health and medical records unequivocally establish that plaintiff was repeatedly evaluated and treated. Moreover, other than his own opinion, plaintiff has not submitted any evidence in admissible form to establish that prior to late June 2006 his mental condition warranted the prescription of Celexa or any other medication. Accordingly, plaintiff has failed to establish that summary judgment should be granted in his favor and plaintiff has likewise failed to establish that an issue of fact exists such that summary judgment in favor of defendants should not be granted. With respect to plaintiff's Motion for Summary Judgment (Dkt. #47) and plaintiff's "Motion to Grant Summary Judgment Due to Lack of Opposition Thereto" (Dkt. #60), the Court notes that defendants did in fact file a response to plaintiff's motion for summary judgment (Dkt. #55) arguing that plaintiff's motion for summary judgment was

premature insofar as discovery was ongoing at that time and genuine issues of fact remained. The Court adds that although plaintiff's motion for summary judgment (Dkt. #47) may have been premature at the time it was filed, the Court has fully considered plaintiff's arguments in that motion, as well as his "Motion to Grant Summary Judgment Due to Lack of Opposition Thereto" (Dkt. #60). In addition, the Court has granted plaintiff's request (Dkt. #86) to treat his response to defendants' motion for summary judgment (Dkt. ##82-85) as a cross-motion for summary judgment.

**<u>CONCLUSION</u>**

For the foregoing reasons, plaintiff's Motion for Summary Judgment (Dkt. #47), plaintiff's "Motion to Grant Summary Judgment Due to Lack of Opposition Thereto" (Dkt. #60) and plaintiff's response to Defendants' Motion for Summary Judgment (Dkt. ##82-85) (which, at plaintiff's request, this Court treated as a Cross-Motion for Summary Judgment (Dkt. #86)) are denied. In addition, for the foregoing reasons, defendants' Motion for Summary Judgment (Dkt. #77) is granted.

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on

motion, to the United States Court of Appeals for the Second Circuit, in accordance with

Rule 24 of the Federal Rules of Appellate Procedure.


                      **SO ORDERED.**

DATED:      Buffalo, New York
              February 17, 2010


                                        **s/ H. Kenneth Schroeder, Jr.**
                                        **H. KENNETH SCHROEDER, JR.**
                                        **United States Magistrate Judge**